Please rise, this court is now in session. Please be seated. The court call the next case please. Thank you. Mr. Gullfuss, good afternoon. Good afternoon, Justice Pattei. Good afternoon, Your Honors. May it please the court, counsel. Demetri Gullfuss from the Office of the State Appellate Defender and I present Brandon Mumaugh. Your Honors, this case stems from a motor vehicle accident in which my client, Mr. Mumaugh, hit a 12-year-old girl named Jennifer. Jennifer was walking in the middle of a highway at night in a rural area where there was no lighting and she was wearing dark clothing. As a result of this accident, Jennifer suffered severe injuries. Her injuries are, without a doubt, tragic. Unfortunately, Louisville County State's Attorney's Office and the Circuit Court responded to this tragedy with an injustice. Mr. Mumaugh was charged and convicted after a stipulated bench trial of aggravated driving under the influence and held criminally responsible for Jennifer's injuries where the state's evidence did not show that Mr. Mumaugh was negligent while driving, that he was impaired while driving, or that there was anything he could have done to avoid this accident once Jennifer became apparent to him from the darkness. Mr. Mumaugh is facing two years in prison as a result of this accident. That is not justice. Therefore, we are here today to ask this Court to do justice and to reverse Mr. Mumaugh's conviction outright. There are two legal reasons why we request reversal. The first is that the evidence at trial was insufficient to convict Mr. Mumaugh of aggravated DUI. The second is that the statute that he was convicted of violating, Section 11-501A6, was unconstitutional at the time of this alleged offense. Your Honors, I will be addressing both of these issues today, and I will start with the claim of insufficient evidence. There are three points that I would like to make concerning the charge of this verdict and the evidence. The first is that when the judge renders his verdict, he said that according to our Supreme Court in Keeble v. Martin, proximate cause doesn't seem to matter in this case. Under the plain language of the aggravated DUI statute, in particular subsection D1C, proximate cause is an element of the offense, so it absolutely matters. The Supreme Court in Martin did not say that it doesn't matter, and in paragraph 26 of its decision, it said that in cases like this, proximate cause is the central issue. It is an element. The second point that I would like to make is that under the definition of proximate cause, Mr. Mumaugh cannot have been the proximate cause of Jennifer's injuries. Our Supreme Court in Keeble v. Hudson said that proximate cause in the criminal context means the exact same thing as it means in the civil context. Proximate cause consists of two components, cause of fact and legal cause. Legal cause was not established at trial. In order for Mr. Mumaugh's conduct to have been the legal cause of Jennifer's injuries, a reasonable person must be able to say that given his conduct, it is likely that Jennifer's injuries was the likely result of Mr. Mumaugh's conduct in this case. And what conduct are we talking about? We are talking about how he violated the misdemeanor DUI statute, and he did that by driving with cannabis and tabloids in his system. Now, like in any other context, when you consider proximate cause, you have to consider what the defendant did in the circumstances. So, he drove with cannabis and tabloids in his system in a non-negligent manner at night on the highway, and the state has conceded in its brief that even though Mr. Mumaugh did have cannabis and tabloids in his body, that they have not established that he was impaired. So, he was driving on the highway at night in a non-negligent manner while unimpaired. So, the strict liability crime, the misdemeanor, which according to the Supreme Court decision says presumes impairment, does not apply? No. Aggravated DUI is not a strict liability crime. No, I'm talking about the misdemeanor. The misdemeanor is a strict liability crime. Absolutely. That's what I'm saying. Absolutely. So, you're saying there's no legal cause? No legal cause for purposes of establishing the element of proximate cause. For aggravated? For aggravated, yes. Okay, but can you import the misdemeanor to establish impairment? What you refer to as the presumption of impairment? That's correct. No. Okay. Here's why. I recognize that the Supreme Court has said that there is a legal fiction that when you commit a misdemeanor DUI, you are presumed impaired. And what that is, is that is a legislative policy judgment. What they said was, well, when they passed the statute, we can't tell based on testing whether a person who has cannabis metabolites in their system,  so we're making a policy judgment that if you have metabolites in your system, we're going to treat you as if you are impaired. That is very different than having a legal presumption where you say, okay, if you establish this, then we presume that for purposes of establishing another element. The legislature certainly could have done that. They could have just said in the statute, if you show that someone has cannabis metabolites in their system, then that person is presumed impaired. They didn't say that. Okay. There's no way you can construe it as that? No. And I think if you were to construe it as that, then what's the purpose of having a proximate cause? But again, his conduct was driving on the highway at night in a non-negative manner, and there's no evidence of impairment. A reasonable person would not consider Jennifer's injuries hitting a pedestrian to be the likely result of driving on a highway at night in a non-negative manner while unimpaired. In contrast, getting hit by a car is the likely result of walking on a highway at night in a dark area over a dark road. Brandon Mamaw did not cause Jennifer to do this. The sole legal and proximate cause of Jennifer's injuries, tragic as they are, was Jennifer's own conduct. The third point I would like to make regarding this issue is that when you consider the case law, that is in Illinois that addresses similar scenarios to our case, that case law compels the conclusion that Brandon Mamaw was not a proximate cause of Jennifer's injuries. In my brief, I cited the Supreme Court's decision in Goldman, and I've also cited the Second District's decision in Rudder v. Court. And what those cases stand for is that when you have the situation where someone is walking in a road and they get hit by a car, the driver of that car is not the proximate cause of that person's injuries, where the driver did not do anything to cause the pedestrian to walk in the road. The driver was driving normally in a non-legal manner, and there was nothing that driver could have done in light of the circumstances to have acted to avoid an accident. Now, all of those circumstances are present here. Again, the evidence is that Jennifer was walking in the highway at night wearing dark clothing in a rural area where there was no light. Mr. Mamaw did not cause her to do that. That was her own decision. The evidence in this case is that Mr. Mamaw was driving in a non-legal manner. In fact, he was driving five miles per hour below the speed limit. The evidence is that when Mr. Mamaw first saw Jennifer, she appeared out of nowhere immediately in front of his vehicle, and he had less than under two seconds to react before that collision. He had no time to react. This accident was unavoidable. It is for these reasons that we respectfully request that Your Honors reverse Mr. Mamaw's conviction outright, because the evidence of proximate cause is insufficient to establish the offense of aggravated DUI. Aside from the evidence being insufficient, this Court should also reverse Mr. Mamaw's conviction because Section 11-501A6 of the Vehicle Code is unconstitutional at the time of this alleged offense. The reason for that is because that version of the statute does not satisfy the rational basis of this, particularly the requirement that the means adopted be a reasonable method of achieving the desired legislative objective. The purpose of this statute is to keep cannabis-impaired drivers off of the road. So if you want to accomplish that purpose, you criminalize people who are driving while impaired by cannabis. Criminalizing drivers who are not impaired by cannabis does not serve the purpose of the statute because they're not impaired. Drivers who are unimpaired by cannabis, at least for purposes of this statute, are innocent people. Now, under the plain language of the statute, what it does is that it says, essentially, you cannot drive or be in actual physical control of a motor vehicle if you have any amount of any cannabis metabolite in your blood, breath, or urine resulting from unlawful use or consumption of cannabis. The practical effect of this is that it criminalizes people who not only drive while impaired by cannabis, but also drivers who are unimpaired by cannabis and have not been impaired or used cannabis for days or even weeks. The statute criminalizes a far greater amount of people who are unimpaired than those who are impaired by cannabis. And we know this because of what forensic toxicologists now know about how cannabis metabolizes in your body, how it causes impairment, and for how long. After someone uses cannabis, they're impaired for several hours. That's the period of time that experts recommend people refrain from driving after using cannabis. When you use cannabis, during those several hours of impairment, THC metabolizes into hydroxy-THC, which is a psychoactive impairing metabolite. And hydroxy-THC further metabolizes into carboxy-THC, which is the non-impairing metabolite. After this period of impairment, THC and hydroxy-THC have metabolized and are no longer present in your body. However, carboxy-THC will remain present far longer than THC and hydroxy-THC. Now, it's common sense that the period of days and weeks is a far greater period of time than several hours. And if the statute criminalizes people for driving while there's any cannabis metabolite in their system, including the non-impairing metabolite carboxy-THC, common sense tells us that the statute criminalizes a much greater number of people who are unimpaired, drivers who are unimpaired by cannabis than it does drivers who are impaired by cannabis. The statute speaks far too broadly. It's not just over-inclusive. We admit over-inclusive is not enough to say that something is not rationally based. The case law is clear on that. The statute is grossly over-inclusive, so much so that it cannot be considered a reasonable method of achieving the legislative objective of keeping drivers who are impaired by cannabis off of the road. At the time the statute was enacted, the legislature didn't have all of the information that you have now. No, it did not. So it was a proper statute at the time that it was enacted because it was based on current knowledge. Correct. Is that right? That's correct. And now there's been a change in the statute that functionally accepts the science that you've just recited for us? Correct. There was a legislative change effective last summer. Which does not apply to Mr. Moon Law. That's correct. Now, of course, we recognize that our Supreme Court in People v. Faith upheld the statute against the due process challenge. So what are you suggesting that we can do about that? I'm suggesting that stare decisis does not apply. And the reason why it does not apply is because the material facts that the Faith Court relied upon to make its decision are not present in our case. And the material facts that the Faith Court relied upon, as Your Honor just mentioned, no longer exist. And the legislature did not make the change retroactive in any way. And that's fine. It was made in the statute. So I guess I'm still not understanding how we can do anything other than follow the statute. The court doesn't have to follow the statute if the statute is unconstitutional. This would be the statute that the Supreme Court said was constitutional. On the basis of their knowledge at the time, the material facts have changed. And the material facts in this case establish that latter type of metabolite existing, but not the other one, the hallucinogen metabolite. Correct. I mean, the testing of the defendant. The testing of the defendant in terms of what the evidence is is pretty ambiguous. All the stipulation was is THC metabolite. Oh, so we don't have that split in two. We don't know what that means. Well, that's right. It could be carboxy. It could be something else. Right. At the end of the day, it's the state's burden to prove what that means. So we'd be speculating. But under the statute as it exists, arguably they would say they have. I don't see how that's possible. I don't understand. I don't see how that's possible. I mean. Just recently had a case come through. I don't think it involved a panel in this court where the Supreme Court said in very unambiguous terms that the appellate court does not have the power to overrule the Supreme Court. And I'm not asking this court to overrule fate. I'm not asking this court to overrule the Supreme Court. What I'm asking this court to do is say that the facts that the Supreme Court relied upon in fate no longer exist. The fact is the opposite. And because those material facts that the fate court relied upon no longer exist. Let's help us out here and be very clear. What were those material facts that no longer exist? Sure. What the Supreme Court didn't say was they cited a forensic scientist whose name is Dr. Benson from one case, people versus gas. That's all they relied upon. The opinion of one forensic scientist from one case. And what he said was that his instruments were not sensitive enough to differentiate between THC and the metabolites that I've discussed. He just categorized everything as cannabinoids. We know now that forensic scientists commonly differentiate between THC, hydroxy-THC, and carboxy-THC. Their instruments are now sensitive enough to, in blood and urine testing, to detect and differentiate not only among these different substances, but to give precise amounts of how much is in blood and urine. And if you look at my appendix, I know it's rather lengthy, but there's charts in there showing testing with forensic scientists differentiating the various concentrations. And because forensic scientists are now able to differentiate these various concentrations, we now see experts giving opinions based on testing as to whether a person was impaired at a certain time. And I've cited in my brief various cases, including the Gancranz case from Illinois where a forensic scientist came into court and based on blood and urine testing and detecting these various concentration levels, gave an opinion as to whether a defendant was impaired at the time of the offense. On top of that, we now have jurisdictions not only in our country but around the world setting THC concentration levels that indicate when a person is impaired, much like blood alcohol content levels indicate when a person is intoxicated. And I guess the final point is that didn't exist at the time when FAIT was decided, was that forensic toxicologists now uniformly are in agreement that simply testing for and detecting carboxy-THC in blood and urine is not a reasonable or reliable method of determining impairment or even recent cannabis use. So I think for all of those reasons, the facts that the Supreme Court relied upon in FAIT no longer exist now. We have all this new information and I think that new information shows that the method that the legislator chose back in 1989 to keep cannabis drivers off the road is grossly over-inclusive. Because you're criminalizing a very small percentage of drivers who are impaired. You've got several hours of impairment compared to days and weeks of non-impairment. That's all the technical aspect of it. But getting back to the legal argument, at the time the statute was enacted and was reviewed by the Supreme Court, it was found not to be unconstitutional, correct? It was found to be constitutional, correct. It was found to be constitutional, not found unconstitutional. Equivalent. Okay. But now you're saying because science has advanced and because the arguable purpose of the statute was to keep impaired drivers off the road, that impairment was presumed with any THC in the system, correct? Any THC, any metabolite THC, correct? Correct. Correct. And now you're saying that because science has advanced, this statute is unconstitutional as applied to this defendant or just unconstitutional? Unconstitutional as applied to everyone. Because science has advanced to a point where we now know that this statute is grossly over-inclusive, that it criminalizes a far, far greater number of innocent people than it does people who are driving while impaired. And I just want to give this Court a citation as to a case that I think stands for a proposition where star excises does not apply in this case because the material facts have changed. In that case, I'll give you one moment. It's Kelly v. Sheriff's Merit Commission. It's from the 2nd District, 2007. The citation is 372, 113, 931. And that case states that the material facts in the Supreme Court case are not present in your case. We are arguing they're not here because they have changed. And star excises does not apply. And this Court is not to follow that Supreme Court decision. We're not asking you to overrule the Supreme Court. We're just saying you're not bound by star excises. Thank you, Your Honor. May it please the Court. Counsel. Lord DeMichael Byler, on behalf of the people. And I'll address the issues in the order they were raised in his brief. The statute was held constitutional in Fate. The statute was held constitutional in Rennie. It remains constitutional. Fate was well aware that A6 criminalized unimpaired driving. It was still held constitutional. And the statute just doesn't view unimpaired driving as innocent. Regarding changes in material facts, the people would note that none of these facts that are apparently necessary to make this argument were presented in the trial court because this argument wasn't made there. Defendant is arguing that he can rely on all kinds of sources that are outside of the record in this case, citing the McCown case, but that's not supported by McCown. The McCown case was in the context of a Fry hearing, specifically, where there wasn't a Fry hearing at issue here. And even in the McCown case, the Court actually found that a hearing was needed to develop the facts. The Court said the Fry issue could not be resolved on judicial notice alone and remanded to the trial court to make appropriate findings of fact and conclusions of law. The people would also note the case law for the general proposition that where the record is insufficient to decide a point because the record wasn't developed for that point, the issue is more properly dealt with in a post-conviction petition or a collateral review, not on direct appeal. Moreover, the science isn't as cut and dry that we have this 0.5 nanograms per milliliter and this is the perfect level and everyone above it is impaired and everyone below it is impaired. It's like with a 0.08 for alcohol, it reflects a policy judgment informed by science, but it's not necessarily the case that everyone above it is impaired, no one below it is impaired. But in terms of the rational basis test, if you were considering it, wouldn't you have the same problem if you said any amount of alcohol in the system is a presumption of impairment and if you had the science available that said no, there's above or below a certain limit, isn't that always saying is that the more refined you can make it, the better chance you have of passing the rational basis test and because now science has developed to give you better tools to determine when there is a level of impairment, that now any level of measurement of THC just is too broad. So doesn't it make sense? Well, I think the legislature could have made the different policy judgment on alcohol. I mean, it used to be 0.10, now it's 0.08. They could say you can't drive with any alcohol in your system. Do you think that would be constitutional because you would pass the rational basis test? I think it would because it was in FATE and FATE concerns the any amount and it's not concerned with whether it's impaired or not. The court decided that prohibiting any amount, even trace amount, even non-impaired amount, is rationally related to the interest in safe streets and highways. But wasn't that based on because they didn't have a way to measure impairment? Well, the FATE court listed a couple of concerns. One of them was that they couldn't determine the concentration, but two other concerns listed in FATE were that there were a vast array of controlled substances and also that there was a variation in degree of impairment from drug to drug and person to person. Now, cannabis was classified with all the other controlled substances at the time, and there still is a vast array of controlled substances, and there's still difficulty. While we can maybe measure what the concentration is in blood or urine, there's still a difficulty in determining for each illegal drug what concentration it is that at which point impairment exists. And there's no breathalyzer for drugs. The urine tests and blood tests are more invasive. They can't just be done at the roadside. And also alcohol functions differently in how it gets into the brain or not into the brain. And as far as the science being cut and dried, that we now know this impairment level, even an article that was from 2012 that was in one of the cases that defendants cited is called Factors that Make Drug Impairment Determination by Specific Impairing Concentrations Untenable. So there's still debate over whether an impairing concentration can be set for all these drugs. And the fact that maybe a level was set later doesn't show that the constitutionality was affected. It doesn't show it's unconstitutional. It's just opposed to unwise. So a different policy judgment has been made, but it's a policy judgment. It doesn't make it unconstitutional. And the Gancars case that the defendant has discussed, in that case the levels were so high, they were off the charts high that the forensic scientists had never seen them before, so from that you could determine it's impaired. But there's also the middle range of, well, what do we do when it's a concentration that maybe someone would be impaired at, maybe another wouldn't, and there's still all those factors. And the Rennie Court discussed how marijuana, the defendant there argued that, well, marijuana's not as bad as these other drugs, and so it should be treated differently in the DUI context. But the Rennie Court found the statute was still constitutional, lumping in cannabis with the other drugs. And it was 2012 before medical marijuana was in Illinois, and it was 2016 was when the level was set. So to say that in 2012 when there's this article about determining the impairing concentrations of drugs being untenable was a 2012 article, that there was some kind of consensus in 2012 that we know this perfect level isn't accurate. Cannabis has been separated from the other drugs now, right? It has. When did that happen? It was, well, medical marijuana was in 2014, and cannabis was broken out of the DUI statute in 2016. Regarding the second issue, defendant's brief, the trial judge could conclude that defendant's A6 violation was approximate cause of the victim's injuries. Regarding defendant's first point today, the trial judge's comment, I believe that in the context of the record, the discussion was referring to whether impairment needed to be shown for approximate cause or not. I believe that in context, the judge was referring to impairment no longer mattering for approximate cause. Maybe it wasn't most artfully stated. Does any of that matter? No, we're reviewing the ruling and not the reasoning. I'm just saying, you only have so much time. It's true, but I think the judge was right that impairment doesn't matter. The case that applies is Martin, and in Martin, the Illinois Supreme Court recently held that where impairment's not an element of the misdemeanor A6, then impairment is not an element of the enhancement either. And Martin did construe the A6 as being a presumption of impairment. That's how it referred to A6. And it stated that the statute requires a causal link only between the physical act of driving, and in that case, it was a death. In this case, it would be an injury. Also, the statute requires only that the violation be a proximate cause, not the proximate cause. There can be multiple proximate causes. So even if the pedestrian was part of the cause, if the driving was a proximate cause, it's still a violation. And injury... Was there any question here that, I mean, she was in the middle of the road, right? Or is that a contest? Well, I think there was some evidence that an individual would testify that she was by the fog line. While that individual had given different statements earlier, her testimony was going to be that she was by the fog line. There was also accident reconstructionists describing where coins that the victim had on her person were scattered mostly in the north lane, and then the defendant was traveling in the south lane. The accident expert said that she was traveling south in the south lane, didn't he? The car's traveling south? No. The pedestrian? Yes. Well, he seemed to believe that she was near the middle of the road, so there was... He was also saying traveling south, I thought. Yes, I think she was traveling south, but I think that the reconstructionist would have said she was near the middle of the road, not the middle of the southbound lane. Which is in contravention to Courtney's statements at the scene. She stated that the... I mean, Courtney's statements at the scene were supported by the accident reconstruction expert. Yes. But Courtney then was saying she would testify on the fog line. Yes. So there is a conflict. Yes, so there is a conflict there. Regarding the Gellman and Ruder cases, those are civil cases. They're not per se violations cases. We have to read the proximate cause requirement through the lens of the criminal statute at issue here, which was interpreted in Martin to mean that there didn't need to be a link between impairment and injury. An ASICS violation is a per se violation. It's driving while presumed impaired. So there doesn't need to be the proof that the impairment is what caused the injuries. If there are no further questions, the people would ask that this court confirm the trial post record. Thank you. Thank you. Mr. Golfis, rebubble. Would you go over that last statement by the appropriate counsel? Which one? The last one. The last one? Yes. Refresh my recollection because I was writing. Yes, I understand. About that, I think, saying what my earlier question was, the impairment, presumption of impairment through the misdemeanor charge is sufficient for the aggravation felony. And that does away with your proximate cause argument. Your Honor, I have no different answer than I did before to that inquiry over to say that the legislature said proximate cause. The Supreme Court in Peeble v. Hudson said that proximate cause means the exact same thing in criminal cases as it does in civil cases. And if the legislator wanted something short of proximate cause, such as causal connection, cause and fact, it wouldn't have said proximate cause in the statute. In fact, it could have just cut off the last part of Subsection C, where it says when the violation was a proximate cause of injuries. They could have just said the person committing a violation of Subsection A was involved in a motor vehicle accident that results in grave bodily harm or permanent disability or disfigurement to another and just cut it off there and not have any causation requirement at all. They chose proximate cause. So then the predicate would have been the misdemeanor and all that's necessary. Assuming they cut off the proximate cause requirement. That's what I said. If there's no proximate cause requirement, all they would have to show is a misdemeanor, DUI, an accident, and injury to another, which is the position that the prosecutor took at the trial. In the statements made to the court. The prosecutor went through an entire closing argument without mentioning proximate cause, despite it being an element in the statute, which I think is a bit absurd. It's absurd and it's outrageous to just ignore an element in the statute. Getting back to your earlier questioning as to what exactly the accident reconstruction said, he made a finding, and this is on page 101 and 102 of the common law record, that Jennifer was walking southbound on the same road near her center line and was struck from behind. And that the strike occurred near her center line. But he did find that she was walking southbound. And I would just mention that the accident reconstructionist is an employee of the state's attorney's office. The only evidence that there is to dispute where exactly she was walking was Courtney's statement that was made after the accident in preparation for this trial, where she said, oh, she may have been walking near the fog lot at that time. Let's consider that in light of all the other evidence. She told Mr. Maumau that Jennifer was walking in the middle of a road, kicking a rock. She told a neutral third party who arrived at the scene and that person's wife that Jennifer was walking in the middle of the road. She told the officers. She made a written statement, yet the state wants to introduce at the last minute, oh, by the way, Courtney now says that she was walking near the fog lot. The physical evidence in this case shows that that's just not what happened. I have a question that you mentioned about the accident reconstruction. What relevance is it that the accident reconstruction expert is or is not an employee of the state's attorney's office? Normally, if you have an employee who's being paid by the state's attorney's office, a prosecuting party in this case, you would consider that purposeless advice in any other trial. So I'm just saying you have someone who's an interested party being paid by the state's attorney concluding that she was walking in the middle of the road. So, okay. How would you explain this? One last point, well, two last points. Number one, when there's THC in your blood and urine, that means that you used cannabis recently, within the past two hours. The presence of THC means that because that's when THC is present in your body. So really all this discussion about what exactly the concentration level is that indicates impairment, should it be five nanograms per milliliter, two nanograms per milliliter, that's really irrelevant. If you have THC, you know that in your system, you know that it was recently used, as opposed to carboxy-THC. What do we know in this record? When was the examination? Was it within two hours of the accident? What do we know? What's the state of the record in all these cases that we're speculating about? All we know is that he voluntarily went to the hospital after the accident, and he gave blood and urine tests. But we have no timeline. The stipulated on this doesn't say that. We don't know. And, again, that's the state's problem. They have some burden of proof. We don't know. And, again, the last point is that this court and Rennie did not address the argument that I'm making here today. So Rennie doesn't matter. Unless this court has any further questions, we would, again, request that this court reverse Mr. Ma's conviction. And I thank you for your time. Any other questions? No. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement, and we'll issue a written decision as quickly as possible. The court will stand in recess for a panel change. Thank you.